IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| HAYDEN SMITH and JAMES D. MEADOWS, On Behalf of Themselves and All Others Similarly Situated,<br><br>    *Plaintiffs*,<br><br>v.<br><br>RESTAURANT CONCEPTS, LLC, LE SEL, LLC, 401 FOOD, LLC, AND PINEWOOD SOCIAL, LLC.<br><br>    *Defendants.* | COLLECTIVE ACTION<br><br>CASE NO. 3:20-cv-00023<br><br>JUDGE RICHARDSON<br><br>JURY DEMAND |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR UNOPPOSED MOTION FOR APPROVAL OF THE PARTIES' SETTLEMENT AGREEMENT AND DISMISSAL WITH PREJUDICE**

Named Plaintiffs Hayden Smith and James D. Meadows, on behalf of themselves and the Opt-In Plaintiffs in this collective action (collectively "Plaintiffs") submit this Memorandum in support of their Unopposed Motion for Approval of Settlement and Dismissal with Prejudice.

**I.    SUMMARY OF CASE AND PROPOSED SETTLEMENT AGREEMENT**

In this Fair Labor Standards Act ("FLSA") collective action, Named Plaintiffs bring suit on behalf of themselves and other similarly situated servers and bartenders who worked at the following Nashville, Tennessee-based restaurants and bars: Downtown Sporting Club, Merchants, Pinewood Social, and Le Sel. These restaurants are owned and operated by Strategic Hospitality. The legal entities, which the Parties have stipulated are the employers of Plaintiffs and those they represent in this action, are Restaurant Concepts, LLC, Le Sel, LLC, 401 Food, LLC, and Pinewood Social, LLC. These entities are the Defendants in this action.

    **A.    Procedural History**

This case was filed on January 9, 2020 by Hayden Smith and James Meadows as

1

representative Named Plaintiffs to challenge Strategic Hospitality's reliance on the tip credit provision of Section 3(m) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203(m), to pay servers and bartenders at its Downtown Sporting Club restaurant and bar. (Doc. No. 1). Ultimately, through the efforts of Named Plaintiffs, the case was expanded by amendment to assert the same allegations at several more of Strategic Hospitality's Nashville-based restaurants and bars. (Doc. No. 11). After negotiation of the parties, Defendants agreed to conditional certification and notice, in accordance with 216(b) of the FLSA, to servers and bartenders who worked at Strategic Hospitality's Downtown Sporting Club, Merchants, Pinewood Social, and Le Sel. (Doc. No. 43). As a result of the efforts of the Named Plaintiffs and through the notice process, two hundred sixty-one (261) servers and bartenders have asserted their wage claims in this action.

After agreeing on an FLSA notice process, the Parties focused their attention on engaging in meaningful discovery that would allow both sides to assess their respective strengths and weaknesses in the litigation. Moreover, the Parties focused their discovery efforts on securing the necessary information to engage in a mediation. On March 26, 2020, the Parties presented their plan to this Court, and requested that the initial case management conference be extended to a date after September 2, 2020, when they had agreed to participate in mediation with Michael Russell serving as the mediator. (Doc. No. 51). On that same day, this Court granted the Parties' request to extend the case management conference until after their mediation.

B. **Plaintiffs' Claims and the Parties' Positions**

Plaintiffs' primary claim in this litigation is that Defendants inappropriately took the FLSA tip credit on regular and overtime hours. Pursuant to this provision, employers are permitted to pay tipped employees a direct cash hourly wage of less than $7.25 per hour, but no lower than $2.13 per hour, so long as several conditions are met. For example, some of the preconditions for employers seeking to rely on the tip credit include that the relevant employees must qualify as

2

tipped employees, they must receive proper notice that their employer is taking the tip credit, they must keep all tips they earn except those shared pursuant to a lawful tip-pooling or tip-sharing arrangement, and their earned tips must be sufficient to make up the difference between the lower, tipped hourly rate and the full $7.25 per hour minimum wage. *See* 29 U.S.C. § 203(m). If an employer fails to meet all of the requirements for taking the tip credit with respect to its employees, then the employer may not rely on it to meet its minimum wage and overtime obligations under the FLSA.

Plaintiffs claim that Defendants' reliance on the tip credit provision of the FLSA was inappropriate for at least three basic reasons:

> (1) Defendants pooled the tips earned by servers and bartenders with barbacks, who did not interact with customers;
>
> (2) Defendants required servers and bartenders to perform such large amounts of non-tip-producing work before, during, and after their shifts that they must be paid the full minimum wage; and
>
> (3) Defendants failed to notify servers and bartenders of the amount of their contribution to the tip pool.

Plaintiffs submit that, if any of these three factors were proven at trial, all Plaintiff servers and bartenders who joined this case would be entitled to a $7.25 minimum wage for all hours worked (essentially awarding them back pay of $5.12 for all hours in which they were paid $2.13 as servers and/or bartenders).

However, Defendants claimed that, even if Plaintiffs were to prove any of the three circumstances above (all of which it adamantly denied), that Plaintiffs would have to prove damages for each work week when a violation occurred. Moreover, Defendants claim that their employment practices with respect to these claims differed between the four restaurants and bars covered by this lawsuit, making the claims inappropriate for collective action treatment through

3

trial.

### C. Overview of Proposed Settlement

The Parties' September 2, 2020 mediation with Mr. Russell resulted in an agreement on a set of terms by which this litigation would be resolved. (Doc. No. 95). The Parties agreed to work cooperatively following the mediation to reach a comprehensive written settlement agreement to resolve this collective action. That work has resulted in the Settlement Agreement attached to Plaintiff's Unopposed Motion as <u>Exhibit 1</u>, and includes the following salient provisions:

> (1) Payments to the Named and Opt-In Plaintiffs for unpaid wages allegedly owed to them under the FLSA, listed in Attachment A to the Settlement Agreement;
>
> (2) Payments to the Named and Opt-In Plaintiffs for liquidated damages allegedly owed to them under the FLSA, listed in Attachment A to the Settlement Agreement;
>
> (3) Service Payments to Named Plaintiffs Hayden Smith and James Meadows for their service as Named Plaintiffs of the collective in this action and separately negotiated payments (after the material terms of the present settlement had been agreed upon) in exchange for a general release of their claims against Defendants;
>
> (4) Payment by Defendants to a Claims Administrator selected by Plaintiffs and their counsel to administer the settlement; and
>
> (5) Payment to Plaintiffs' counsel for their fees and advanced costs incurred in litigating this matter at an amount below the amount of fees and expenses actually incurred by Plaintiffs.

For the reasons discussed below, the Parties represent that the terms of their Agreement are a fair and reasonable compromise of the claims in this action.

## II. THE PARTIES' SETTLEMENT FAIR AND REASONABLE AND SHOULD BE APPROVED.

Courts review settlements under the FLSA to ensure that they are fair and reasonable. *Steele v. Staffmark Investments, LLC*, 172 F. Supp. 3d 1024, 1028 (W.D. Tenn. 2016); *Nutting v.*

*Unilever Mfg. (U.S.) Inc.*, No. 2:14-CV-02239-JPM, 2014 WL 2959481, at *3 (W.D. Tenn. June 13, 2014); *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 (11th Cir. 1982); *Rampersad v. Certified Installation LLC*, No. 1:12-cv-00032, 2012 WL 5906878, at *1 (E.D. Tenn. Nov. 26, 2012). The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement. *Massiah v. Metroplus Health Plan, Inc.*, No. 11-cv-5669, 2012 WL 5874655, at *5 (E.D.N.Y. Nov. 20, 2012); *Trauth v. Spearmint Rhino Cos. Worldwide*, No. 09-cv-1316, 2012 WL 4755682, at *5 (C.D. Cal. Oct. 5, 2012); *cf. O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009) (standards for certification of an FLSA collective action are less stringent than under Rule 23). This is because, unlike in a Rule 23 class action, there are no absent class members in a 216(b) collective action. Rather, in a 216(b) collective action like this one, each Opt-In Plaintiff has affirmatively consented to join the case as a plaintiff and agreed to be bound by any judgment or settlement reached by the Named Plaintiffs and their counsel.

An FLSA settlement need only reflect a reasonable compromise of contested litigation involving a *bona fide* dispute between the parties. *Crawford v. Lexington-Fayette Urban Cty. Gov't*, No. Civ. A. 06-299-JBC, 2008 WL 4724499, at *2 (E.D. Ky. Oct. 23, 2008) (citations omitted); *Bartlow v. Grand Crowne Resorts of Pigeon Forge*, No. 3:11-cv-400, 2012 WL 6707008, at *1 (E.D. Tenn. Dec. 26, 2012); *Rampersad*, 2012 WL 5906878, at *1; *Kritzer v. Safelite Solutions, LLC*, No. 2:10-cv-0729, 2012 WL 1945144, at *5 (S.D. Ohio May 30, 2012).

**A.     The proposed settlement represents a fair and reasonable compromise of Plaintiffs' claims.**

The proposed settlement represents a fair and reasonable compromise of Plaintiffs' claims. The parties have several *bona fide* disputes over the issues in this litigation, including, but not limited to: (i) whether the certification and trial of this case as a collective action is appropriate;

5

(ii) whether Defendants' reliance on the tip credit provision of Section 3(m) of the FLSA, 29 U.S.C. § 203(m), to pay its servers at their restaurants and bars covered by this lawsuit was appropriate given its pay practices; (iii) the applicable statute of limitations, pursuant to 29 U.S.C. § 255; and (iv) the amount of damages if any.

With these issues in mind, the parties engaged in discovery focused on the exchange of information and data necessary to allow each side to assess the strengths and weaknesses of Plaintiffs' claims. Armed with that information, the parties engaged in mediation that was facilitated by Michael Russell, an experienced mediator in wage-and-hour collective action litigation. In light of the considerable risk, cost, and uncertainty of continued litigation, the Parties submit that their Settlement Agreement should be approved by the Court as being fair and reasonable.

> **1. Plaintiffs' total recovery under this settlement is reasonable in light of the significant hurdles they would have had to overcome to prevail at trial of this matter.**

Importantly, the formula used by the Plaintiffs' counsel to calculate each Opt-In Plaintiffs' damages was the result of informal discovery and reflects a data-driven compromise of the disputed factual issues in the case. For each of the two hundred sixty-one (261) Plaintiffs in this action, Defendants produced and Plaintiffs' counsel reviewed pay and time for every work week covered by the three-year statute of limitations. Additionally, Defendants produced "tip sheets" for all weeks worked by Plaintiff during the time period covered by this lawsuit, which showed how the tip pools at issue were divided. Plaintiffs and their counsel then worked with a statistical expert to construct a damages model for each of the Plaintiffs.

The central dispute in this case is whether there were any weeks in which Defendants did appropriately take the tip credit. Assuming Defendants' pay practices violated the tip credit provisions of 29 U.S.C. § 203(m), Defendants took the position that Plaintiffs would have to prove,

6

Case 3:20-cv-00023   Document 100   Filed 10/02/20   Page 6 of 18 PageID #: 681

for each workweek, that Defendants' practices violated the FLSA. Plaintiffs, on the other hand, took the position that the tip credit provision was violated for every workweek.

Recognizing the uncertainties and risks inherent in litigation, Plaintiffs and Defendants ultimately reached a compromise that pays the Named and Opt-In Plaintiffs $274,400.00. Based on the pay, time, and tip data provided to Plaintiffs by Defendant, this amount represents approximately forty-two percent (42%) of the unpaid wages the Named and Opt-In Plaintiffs could have recovered for the two years preceding the filing of their claims in this action. Plaintiffs and their counsel assessed their damages under the FLSA's two-year statute of limitations because the FLSA only permits recovery under a three-year statute of limitations if the Plaintiffs are able to prove that the Defendants' violations were willful. Based on their analysis of the discovery produced in this litigation and the testimony they anticipated relying on had this case not resolved, Plaintiffs' counsel does not believe that they would have proven willfulness.

### 2. The proposed allocation of Plaintiffs' recovery under this settlement reflects their counsel's assessment of the strengths of their claims.

The allocation of the settlement funds is based on Plaintiffs' counsel's assessment that Plaintiffs were unlikely to prevail on their claim that Defendants had willfully violated the FLSA. Plaintiffs' expert first allocated a minimum of $25.00 to all Plaintiffs. This baseline allocation ensures that all Plaintiffs recover a base minimum, even if their claims fell slightly outside of a time period covered by a statute of limitations or if their work for the Defendants was so limited that Plaintiffs' analysis did not result in them receiving a damages recovery.

Plaintiffs' expert then allocated the settlement funds to Plaintiffs, dividing them between recoverable wages and recoverable liquidated damages, and weighted the recovery for each Plaintiff such that workweeks covered by the two-year statute of limitations where given twice the value of workweeks covered by only three-year statute of limitations. Plaintiffs' counsel submits

7

that this is an appropriate allocation of these settlement funds, as it reflects their assessment of the strength of Plaintiffs' claims.

### 3. The payments to Named Plaintiffs for their service as representatives of the Opt-In Plaintiff and in exchange for their general releases are reasonable.

The other terms of the Settlement Agreement are the product of good-faith, arms-length negotiations during a mediation attended by the Parties and their counsel. For example, if the Parties' settlement is approved, Named Plaintiffs Smith and Meadow will receive separate consideration of $2,500.00 as a service payment for their substantial efforts on behalf of the Opt-In Plaintiffs and their assistance to counsel. Named Plaintiffs Smith and Meadows' efforts in this case were substantial. For example, they spoke extensively with counsel during the investigation stage of this case prior to the filing of the initial complaint in this case. *See* Declaration of David Garrison ("Garrison Decl.") at ¶ 17. They spread the word about the case so many Opt-In Plaintiffs could join the case in its very early stages. *Id.* Named Plaintiffs also worked to ensure that others with whom they were in contact that had expressed a desire to join with them in this collective action received the necessary information from Plaintiff's counsel to join the case. *Id.* Both Named Plaintiffs Smith and Meadows participated in the mediation and were intimately involved in every step of the negotiation of the settlement, which resulted in the proposed settlement for the Court to consider. *Id.*

Under such circumstances, courts routinely approve similar service payments in line with what the settlement agreement here would provide for Named Plaintiffs Smith and Meadows. *Johnson v. Midwest Logistics Sys., Ltd.*, No. 2:11-cv-1061, 2013 WL 2295880, at *5 (S.D. Ohio May 24, 2013) (approving service payment of $12,500 to the named plaintiff in FCRA case where class members received either $260 or 1,000 each, finding "that the incentive award does not undermine the fairness of the settlement"); *Dallas v. Alcatel-Lucent USA, Inc.,* No. 09-

14596, 2013 WL 2197624, at *11 (E.D. Mich. May 20, 2013) (incentive payments justified where plaintiffs "responded to discovery requests, including document productions; participated in many conferences with Plaintiffs' counsel; and took the risk of joining this litigation at an early stage"); *Brent v. Midland Funding, LLC*, 2011 WL 3862363, at *15 (N.D. Ohio Sept. 1, 2011) (finding incentive payments justified). Named Plaintiffs Smith and Meadows' substantial efforts, and the outcome achieved as a result of those efforts, justifies their service payments.

Separate and apart from the negotiation of their proposed service award, the Parties negotiated a general release of both Named Plaintiffs' claims, except for an unfair labor practice charge that was filed by Named Plaintiff Smith and is pending before the National Labor Relations Board. Garrison Decl. ¶ 18. Specifically, during the process of finalizing the written settlement agreement following mediation, Defendants determined that, separate and apart from the relief contained in the settlement agreement, they desired for the Named Plaintiffs to enter into a general release. *Id.* As a result, the parties negotiated a separate payment in consideration for a broader release. *Id.* In exchange for entering into a general release, Named Plaintiffs will each received $1,000.00 as consideration for that waiver, should this settlement agreement be approved. *Id.*

**B. The proposed settlement provides for a payment of Plaintiffs' attorneys' fees and expenses that is fair and reasonable.**

The settlement of Plaintiffs' attorneys' fees and expenses for $140,000 represents a payment based on the lodestar accrued in this litigation. As of the date of this filing, Plaintiffs' have incurred $143,589.48 in attorneys' fees and expenses ($129,048.50 in attorneys' fees and $14,540.98 in expenses). Garrison Decl. ¶ 8.

Defendants have agreed to pay a sum that is roughly equivalent to the fees and expenses incurred by Plaintiffs' counsel during the course of this litigation based on hourly rates that have been approved by this Court in settlements of other FLSA collective action cases. The FLSA's

9

fee-shifting language provides that a prevailing plaintiff shall recover reasonable attorneys' fees and litigation costs. 29 U.S.C. § 216(b). "Indeed, an 'award of attorneys' fees under the FLSA is mandatory . . . .'" *Thompson v. United Stone, LLC*, No. 1:14-cv-224, 2015 WL 867988, at *2 (E.D. Tenn. Mar. 2, 2015) (citations omitted). "[T]he purpose of the FLSA attorney fees provision is 'to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances.'" *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994) (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.*, 732 F.2d 495, 501 (6th Cir.1984)).

The starting point in calculating a "reasonable" attorney fee is typically the determination of the fee applicant's "lodestar," which is the proven number of hours reasonably expended on the case by an attorney, multiplied by his court-ascertained reasonable hourly rate. *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). Here, Plaintiff's counsel's actual fees through the execution of this Agreement, based on the number of hours expended multiplied by the attorneys' regularly hourly billing rates is $129,048.50. *See* Garrison Decl. ¶¶ 8-9. Plaintiffs have also incurred expenses totaling more than $14,540.98 as of the date of this filing. *Id.* In total, Plaintiffs have incurred a total of $143,589.48 in fees and expenses in this matter. *Id.* Accordingly, the proposed payment of $140,000 for attorneys' fees and expenses would therefore "not produce [a] windfall[]" to Plaintiff's counsel and confirms its reasonableness. *Blum v. Stenson*, 465 U.S. 886, 897 (1984) (citations omitted). In fact, the $140,000 compromised payment for attorneys' fees and expenses is less than the fees and expenses Plaintiffs have actually incurred to date. *Id.* ¶ 12. Moreover, through the administration of the settlement, Plaintiffs estimate that they will incur approximately $10,000 additionally in fees and expenses. *Id.*

Plaintiffs' counsel's fees are based on hourly rates that are reasonable. Whether an hourly rate is reasonable should be considered in the context of "the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984); *see also Monroe v. FTS USA, LLC*, No. 2:08-cv-2100, 2014 WL 4472720 at *9 (W.D. Tenn. July 28, 2014) (noting, in the FLSA context, that an attorney's reasonable hourly rate should begin with an assessment of the "prevailing market rate"). The hourly rates billed by each of the attorneys who worked on this case and for whom compensation is sought are reflected in the declaration of undersigned counsel. Garrison Decl. ¶ 10. The hourly rates upon which Plaintiffs' counsel's lodestar is based are reasonable. Indeed, the same hourly rate structure used by Plaintiffs' counsel in other settlements of FLSA collective actions approved by this Court and other courts within the Sixth Circuit. Garrison Decl. ¶¶ 10-11.

As the Supreme Court has held, "there is a 'strong presumption' that the lodestar figure is reasonable[.]" *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010); *see also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565 (1986), *supplemented*, 483 U.S. 711 (1987) ("A strong presumption that the lodestar figure—the product of reasonable hours times a reasonable rate—represents a 'reasonable' fee is wholly consistent with the rationale behind the usual fee-shifting statute . . . ."); *McCutcheon*, 2013 WL 4521016, at *1 (citation omitted) ("[T]here is "a 'strong presumption' that the lodestar 'represents a reasonable fee.'"); *Mathis v. Wayne Cty. Bd. of Educ.*, No. 1:09-cv-0034, 2011 WL 3320966, at *8 (M.D. Tenn. Aug. 2, 2011) (Trauger, J.), *aff'd*, 496 F. App'x 513 (6th Cir. 2012) ("If the requested fee is essentially in line with the 'lodestar,' then there is a strong presumption that the requested fee is reasonable and recoverable.") (footnote omitted).

Furthermore, while Plaintiffs' position is that a lodestar analysis is the appropriate analysis here, a look at the percentage of the total recovery comprised by attorneys' fees and expenses

confirms the reasonableness of the negotiated payment for attorneys' fees and expenses. Specifically, these fees make up just under thirty-three percent (33%) of the aggregate recovery of $425,000.

Courts in the Sixth Circuit have frequently approved fee and expense payments in common-fund settlements in the wage-and-hour context, in which the plaintiffs' attorneys receive one-third (1/3) or more of the total recovery as payment for the attorneys' fees and expenses incurred.[1] As recently as August 26, 2020, Chief Judge Reeves of the Eastern District of Kentucky found "one-third common fund fees reasonable under the FLSA." *Ware v. CKF Enterprises, Inc.*, No. 5:19-cv-183-DCR, 2020 WL 5087766, at *7 (E.D. Ky. Aug. 26, 2020) (approving hybrid FLSA and Kentucky state-law wage-and-hour settlement). And, in approving a one-third common fund fee award in an FLSA collective action, one court within the Sixth Circuit specifically noted that such an award may even be "reasonable when it amounts to double the loadstar attorneys' fees incurred by the plaintiffs' counsel." *Osman v. Grube, Inc.*, No. 3:16-CV-00802-JJH, 2018 WL 2095172, at *3 (N.D. Ohio May 4, 2018) (citing *Thorn v. Bob Evans Farms, Inc.*, No. 2:12-cv-00768, 2016 WL 8140448, at *3 (S.D. Ohio Feb. 26, 2016)).

Here, the agreed upon payment for attorneys' fees and expenses represents a slight

---

[1] *See, e.g.*, *Swigart v. Fifth Third Bank*, No. 1:11-cv-88, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) (awarding 33% of common fund in hybrid FLSA collective and class action and noting "[a]n award of 33% of the total settlement fund is well within the range of fees requested in class and collective actions in Ohio federal district courts"); *Kritzer v. Safelite Solutions, LLC*, No. 2:10-cv-0729, 2012 WL 1945144, at *10 (awarding attorney's fees and costs of 52% of total recovery in a hybrid FLSA collective and class action); *In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 2:12-CV-83, 2014 WL 2946459, at *1 (E.D. Tenn. June 30, 2014) ("The Court finds that the requested counsel fee of one third is fair and reasonable and fully justified. The Court finds it is within the range of fees ordinarily awarded."); *New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 635 (W.D. Ky. 2006), *aff'd sub nom. Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) ("[A] one-third fee from a common fund case has been found to be typical by several courts.").

reduction of the amount incurred to date, and Plaintiffs' counsel anticipate incurring more through the administration of the settlement. Thus, though not required, a percentage-of-the-fund analysis shows that this settlement will result in a payment of just under one-third of the gross recovery, confirming the reasonableness of the agreed-upon payment for attorneys' fees and expenses.

Given the reasonableness of Plaintiffs' counsel's hourly rates and hours expended, the strong presumption that the lodestar represents a reasonable fee confirms the reasonableness of the fee request. Therefore, Plaintiff's Counsel respectfully submits the requested fee and expense award is fair and reasonable and should be approved.

### C. Restaurant Opportunities Centers United is an appropriate *cy pres* recipient to receive any unclaimed funds from this settlement.

"*Cy pres* distributions are proper in connection with a class settlement, subject to court approval of the particular application of the funds." *In re Janney Montgomery Scott LLC Financial Consultant Litigation*, Case No. 06-3202, 2009 WL 2137224, *11 (E.D. Pa. July 16, 2009) (citing 4 NEWBERG § 11.20). "Federal courts have broad discretionary powers in shaping equitable decrees for distributing unclaimed class action funds." *Van Gemert v. Boeing Co.*, 739 F.2d 730, 737 (2d Cir. 1984); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990), cited approvingly by *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 827 (6th Cir. 2006). The Court's choice among distribution options should be guided by the objectives of the underlying statute and the interests of the silent class members. *See Six Mexican Workers*, 904 F.2d at 1307. Indeed, appellate courts review a district court's conclusion that a settlement agreeing to a *cy pres* distribution is reasonable for abuse of discretion. See *In re Airline Ticket Comm'n Antitrust Litig.,* 307 F.3d 679, 682 (8th Cir. 2002); *Wilson v. Sw. Airlines*, 880 F.2d 807, 811 (5th Cir. 1989).

"Courts have generally looked favorably on distributions to charities that offer services that

13

are related to the plaintiffs of a class action." *Lessard v. City of Allen Park*, 470 F. Supp. 2d 781, 783 (E.D. Mich. 2007) (*citing Rodriguez v. Berrybrook Farms, Inc.*, Case No. K86-161 CA8, 1990 WL 10520985, *3 (W.D. Mich. Oct. 29, 1990), citing *Six Mexican Workers*, 904 F.2d at 1309). Organizations "that provide legal services to low-income individuals" are common types of beneficiaries of *cy pres* awards. *Lessard*, 470 F. Supp. 2d at 783. In fact, *cy pres* distributions have been utilized in collective action settlements under the FLSA. *See e.g., Mitcham v. Intrepid U.S.A., Inc.*, et al. 3:17-cv-703 (W.D. Ky. May 28, 2019) (Boom, J.); *Carter v. Anderson Merchandisers, LP,* Case No. EDCV 08-00025-VAP and EDCV 09-0216-VAP, 2010 WL 144067, *5 (C.D. Cal. Jan. 7, 010) (Legal Aid of Northwest Texas a *cy pres* beneficiary); *Parker v. Time Warner Entertainment Co., L.P.*, 31 F.Supp.2d 242, 250 (E.D.N.Y. 2009) (*cy pres* distribution to Samuelson Law and the Technology & Public Policy Clinic at Boalt Hall Law School); *Gilliam v. Addicts Rehabilitation Center Fund*, Case No. 05 Civ 3452(RLE), 2008 WL 782596, *3 (S.D.N.Y. Mar. 24, 2008) (remaining *cy pres* award to be paid to The Legal Aid Society); *Diamond Chem. Co., Inc. v. Akzo Nobel Chems. B.V.*, Case No. 01-2118, 02-1018, 2007 WL 2007447, at *5 (D.D.C. July 10, 2007) (*cy pres* distribution to go to a newly created endowment fund at The George Washington University Law School); *Superior Beverage Co.*, 827 F. Supp. at 478-79 (*cy pres* distributions given to legal aid bureau and various law school programs, among other beneficiaries).

As a part of the proposed settlement agreement, the Parties agreed that the Plaintiffs may seek approval of a *cy pres* recipient to receive any funds that are not distributed by the claims administrator from the qualified settlement fund that is established to receive the settlement funds from the Defendants and distribute to the Plaintiffs. Garrison Decl. ¶ 19. There are really two potential sources of remaining funds: (1) checks that are not cashed or deposited by Plaintiffs; or

(2) some part of the expenses that are not incurred by the claims administrator. *Id.* Of course, neither Named Plaintiffs nor their counsel expect any payment to the *cy pres* recipient to be significant because Plaintiffs' counsel have maintained communications with the Named and Opt-In Plaintiffs and feel confident that they will be able to work with the claims administrator to effectively distribute the funds and because the settlement agreement provides Plaintiffs with one hundred eighty (180) days to negotiate their settlement checks. *Id.*

However, Plaintiffs proposed this component of the settlement agreement because of the additional cost of either re-distributing any remaining funds to the Plaintiffs or properly turning all unclaimed funds over to the state pursuant to its escheatment laws. *Id.* Both of these options would have required a larger fee to be paid to the claims administrator and, as a result, would be more costly than paying all residual funds to a *cy pres* recipient that focuses its work on improving the working conditions for restaurant workers. *Id.* Courts in the Sixth Circuit have noted that designating a *cy pres* recipient "is often preferred over escheat to the government." *See, e.g., Rosser v. A & S Contracting, Inc.*, No. 2:15-CV-00711, 2017 WL 666121, at *2 (S.D. Ohio Feb. 17, 2017) (citation omitted) (approving *cy pres* in FLSA case); *In re Polyurethane Foam Antitrust Litig.*, 178 F. Supp. 3d 621, 623 (N.D. Ohio 2016) (citation omitted) (noting that courts typically prefer distributing funds to a *cy pres* recipient "[r]ather than see money escheat to the state or revert to the defendant").

Thus, Plaintiffs proposed and the Parties agreed that any remaining funds after the 180-day time period for cashing or depositing settlement payments has expired shall be paid to the Restaurant Opportunities Centers United ("ROC") as a *cy pres* recipient. Garrison Decl. ¶ 20. ROC was selected because it is a nonprofit organization focused on improving wages and working conditions for the nation's restaurant workforce. Garrison Decl. ¶ 20; Declaration of Jordan

Romanus ("Romanus Decl.") at ¶ 1. During his employment with Defendants, Named Plaintiff Smith—who has worked in the restaurant industry for nearly the last ten years—reached out to ROC as a resource to help in his and others' efforts to improve the working conditions in the restaurant industry in Nashville. Garrison Decl. ¶ 20. Since first reaching out to ROC, Smith has continued to work with ROC in a volunteer capacity, including co-founding its Nashville chapter. *Id.* Named Plaintiff Smith has never been employed by ROC or had any other ties beyond his efforts to advance its mission of helping restaurant workers through volunteer work. *Id.*

ROC was founded after Sept. 11, 2001, as a worker relief center for affected restaurant workers and their families, and has grown into a national organization, activating thousands of restaurant workers, employers, allies, and consumers. Romanus Decl. ¶ 3; *see also id.* ¶¶ 4-6. ROC operates based on a chapter system, focusing their work in various cities around the country. *Id.* ¶¶ 5-6. Recently, ROC has worked on behalf of Nashville restaurant workers, and ROC will ensure that any *cy pres* funds are spent on behalf of their work for those Nashville workers. *Id.* ¶ 6.

In other words, the mission of ROC closely aligns with the goals of the FLSA and the workers who are Named and Opt-In Plaintiffs in this action. Thus, ROC is an appropriate *cy pres* recipient because "its interests reasonably approximate those being pursued by the class." *E.g.*, *Rosser*, 2017 WL 666121, at *2 ("In making a *cy pres* distribution, courts look 'favorably on distributions to charities that offer services that are related to the plaintiffs of a class action.'"); *see also In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp. 3d 985, 1004 (N.D. Ohio 2016) (ordering lead counsel to identify *cy pres* "beneficiaries that have objectives related as closely as possible to the purposes and remedies sought by the class action").

III. CONCLUSION

For the reasons stated above, Plaintiffs submit that the Court should approve all aspects of the Settlement Agreement as fair and reasonable, and enter the proposed order attached to their

Motion approving the settlement and dismissing this case with prejudice. Defendants agree that the proposed settlement should be approved.

Dated: October 2, 2020

Respectfully submitted,

/s/ David W. Garrison
**DAVID W. GARRISON (No. 24968)**
**JOSHUA A. FRANK (No. 33294)**
BARRETT JOHNSTON MARTIN & GARRISON, LLC
Philips Plaza
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: (615) 244-2202
Facsimile: (615) 252-3798
dgarrison@barrettjohnston.com
jfrank@barrettjohnston.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of this *Plaintiffs' Memorandum Of Law In Support Of Their Unopposed Motion For Approval Of The Parties' Settlement Agreement And Dismissal With Prejudice* was filed electronically with the Clerk's office by using the CM/ECF system and served via the Court's ECF system on the following counsel for Defendants on October 2, 2020:

Andrew S. Naylor
Aron Z. Karabel
Casey M. Duhart
Waller Lansden Dortch & Davis, LLP
511 Union St., Suite 2700
Nashville, TN 37219
Telephone: (615) 244-6380
Facsimile: (615) 244-6804
Andy.Naylor@wallerlaw.com
Aron.Karabel@wallerlaw.com
Casey.Duhart@wallerlaw.com

J. Scott Hickman
Sherrard Roe Voigt & Harbison
150 3rd Ave. S, #1100
Nashville, TN 37201
Telephone: (615) 742-4561
Facsimile: (615) 742-4539
shickman@srvhlaw.com

*Attorneys for Defendants*

                                            /s/ David W. Garrison
                                            DAVID W. GARRISON
                                            **BARRETT JOHNSTON**
                                                **MARTIN & GARRISON, LLC**